2022 IL App (1st) 210444-U

No. 1-21-0444

August 30, 2022

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 93 CR 20392 |
| | ) | |
| MARCOS GRAY, | ) | Honorable |
| | ) | Colleen A. Hyland, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

ORDER

¶ 1    *Held*:  We affirm defendant's 60-year sentence for first degree murder where the court considered his youth, attendant characteristics, and all relevant factors in aggravation and mitigation.

¶ 2    Following a jury trial in 2000, defendant Marcos Gray was found guilty of first degree murder and attempted armed robbery and was sentenced, respectively, to a mandatory term of natural life imprisonment and a concurrent term of 15 years' imprisonment. We affirmed on direct appeal. *People v. Gray*, No. 1-00-4122 (2002) (unpublished order under Illinois Supreme Court

Rule 23). Later, on collateral review, we vacated defendant's sentence for murder and remanded for a new sentencing hearing. *People v. Gray*, No. 1-11-2572 (Dec. 16, 2015) (unpublished summary order under Illinois Supreme Court Rule 23(c)(2))[1].

¶ 3     On remand, the circuit court imposed 60 years' imprisonment for murder. Defendant appeals from that order, arguing the sentence is excessive because he committed the offense at age 16 and the court did not properly weigh his participation in the offense, remorse, and rehabilitation. We affirm.

¶ 4     Following a 1995 jury trial, defendant was found guilty of the first degree murder and attempted armed robbery of Sheila Doyle. The trial court imposed a mandatory term of natural life imprisonment for first degree murder concurrent to 15 years' imprisonment for attempted armed robbery. On direct appeal, we ruled the trial court erred in denying defendant's motion to suppress statements, reversed the judgment, and remanded for a new trial. *People v. Gray*, No. 1-96-0278 (1998) (unpublished order under Illinois Supreme Court Rule 23).

¶ 5     At defendant's second jury trial in 2000, evidence established that on July 3, 1993, defendant, then age 16, was riding in a vehicle with Antwon Tyler and another individual. They observed Doyle driving, followed her to her garage, and attempted to steal her vehicle to replace a vehicle damaged by Tyler. Tyler shot and killed Doyle during the incident, then fled with defendant. Doyle's body was found in the trunk of her vehicle, and defendant's and Tyler's fingerprints were found on the trunk. Defendant was found guilty under an accountability theory and sentenced to a mandatory term of natural life imprisonment for murder concurrent to 15 years'

---

[1] The court's summary order was incorrectly filed with an electronic citation for an opinion, 2015 IL App (1st) 112572-B.

imprisonment for attempted armed robbery. We affirmed on direct appeal. *Gray*, No. 1-00-4122 (2002) (unpublished order under Illinois Supreme Court Rule 23).

¶ 6    Defendant initiated multiple collateral proceedings. Relevant here, in December 2010, defendant filed a petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). He argued that his conviction and sentence were void because the trial court lacked subject matter jurisdiction. The circuit court dismissed the petition. On appeal, we affirmed over defendant's contention that his mandatory life sentence was void under *Miller v. Alabama*, 567 U.S. 460 (2012). *People v. Gray*, 2013 IL App (1st) 112572.

¶ 7    The supreme court denied defendant's petition for leave to appeal, but issued a supervisory order vacating our judgment and directing us to reconsider in light of *People v. Davis*, 2014 IL 115595. *People v. Gray*, No. 115906 (Ill. Jan. 28, 2015) (supervisory order). Subsequently, we vacated defendant's sentence for murder and remanded for a new sentencing hearing in view of *Miller*, *Davis*, and *People v. Thompson*, 2015 IL 118151. *Gray*, No. 1-11-2572 (Dec. 16, 2015) (unpublished summary order under Illinois Supreme Court Rule 23(c)(2)). We noted that during resentencing, the court "may consider all permissible sentences and is not limited to the sentence of life without parole." *Id*. ¶ 9.

¶ 8    Defendant's resentencing hearing began on October 16, 2019.

¶ 9    In aggravation, the State proffered transcripts from defendant's second trial and sentencing hearing, the certified copy of defendant's conviction, and the victim impact statements of Doyle's husband, daughter, and twin sister. In the statements, they describe their feelings about Doyle's murder, difficulties grieving her loss, and thoughts about defendant's accountability and punishment. The State also tendered defendant's certified copy of conviction for murder and armed

robbery in case No. 93 CR 21971 and the trial and sentencing transcripts from that case. The parties stipulated this evidence should be considered in aggravation. The court entered the exhibits into evidence and they are included in the record on appeal.

¶ 10     Defendant's original presentence investigation report (PSI), ordered December 7, 1995, established that he received concurrent terms of 55 years' and 30 years' imprisonment for murder and armed robbery, respectively, in case number 93 CR 21971. At the time of sentencing in that case in 1996, defendant had pending charges of armed robbery and aggravated unlawful restraint in case number 93 CR 21972.

¶ 11     The original PSI established that defendant was the youngest boy of 10 children and denied experiencing childhood abuse. He stated that he was the only member of his family to have "trouble with the law or substance abuse," and described his school companions as a "bad crowd." Defendant began using alcohol "all day everyday [*sic*]" at age 15, and his mother requested he seek mental health care for his "uncontrollable" temper when drinking. He quit school after the tenth grade and was a member of the Black Disciples gang for two years.

¶ 12     In case No. 93 CR 21971, defendant was convicted of the murder and armed robbery of Edwin Carlock, as he was sitting in a vehicle with two women and three children. Defendant was sentenced to 55 years' imprisonment. The evidence in aggravation at defendant's sentencing hearing for case No. 93 CR 21971 showed that, in May 1993, defendant was arrested for shooting a man in the left shoulder and right hand. It also showed that, in August 1993, defendant was arrested for pushing a seven-year-old boy off his bicycle and informed the boy's grandfather, a police officer, that he would kill the boy's family.

¶ 13    Defendant's mother, Arlene Gray, testified in mitigation at defendant's sentencing hearing for case No. 93 CR 21971. Arlene testified that defendant's father, Eddie, treated defendant differently from their other children due to the color of his skin. Eddie abused defendant and believed he was not defendant's father. Defendant suffered from asthma since childhood, and Eddie refused to provide Arlene with money for his treatment. After Arlene divorced Eddie in 1982 or 1983, defendant did not have a male role model in the house and Arlene needed to work two jobs to support the family. Defendant was a good student until his second year of high school, when he began drinking and made new friends, including Tyler, who was several years older than him.[2]

¶ 14    In mitigation, Denise Parker, defendant's oldest sister, testified that living with her stepfather, Eddie Gray, was "[h]ell." He abused the siblings and targeted defendant because of his skin color. Eddie never acknowledged paternity of defendant. Parker left home when defendant was two years old, but reconnected with him "in the recent past." Parker described defendant as an "intelligent man" who "matured a lot." She stated that Eddie was "demented," and defendant did not "get a fair shake."

¶ 15    Toya Danielle Gray, defendant's younger sister, testified that Eddie claimed that defendant was not his son due to defendant's dark skin tone. Eddie once forced defendant to eat until defendant vomited. Their older brothers were harsh on defendant and called him "weak" because he was intelligent and wrote lyrics and poems. Defendant changed after grammar school and began

---

[2] Arlene testified in mitigation that Tyler was approximately three years older than defendant, but the defense's mitigation report establishes that Tyler was six years older than defendant.

associating with older people, including Tyler, who influenced him to do "bad stuff." Defendant was an "inspiration" to the family and encouraged Toya and her children from prison.

¶ 16    Sylvia Gray, defendant's older sister, testified that defendant was treated differently than the other siblings because of his skin color. Eddie disciplined defendant "[w]ith extension cords [and] switches" from trees. At the time of sentencing, defendant had matured and became "an intelligent young man," who was close with Sylvia's children and a positive influence in her life.

¶ 17    Pastor Brett Mahlen testified that defendant took classes through Mahlen's ministry and participated in worship services while in prison. Mahlen described defendant as a "wordsmith" who exhibited "good behavior" and "a converted heart." Mahlen believed that defendant had genuinely changed.

¶ 18    Dr. Robert Hanlon, an expert in neuropsychology, testified that during mid-adolescence, the brain changes structurally and physiologically. Areas of the brain enabling judgment, impulse control, decision making, morals, and values are not fully developed in 16-year-olds.

¶ 19    Dr. Hanlon evaluated defendant on July 25, 2018, and opined that defendant was influenced by "a number of factors" during his adolescence, including heavy alcohol consumption and feelings of insecurity, inadequacy, and depression. Defendant wanted acceptance by his peers, in particular Tyler, whom he "looked up to and *** wanted to impress as being a tough guy and part of the team." Defendant's personality profile reflected "chronic depression," poor self-confidence, and a history of suicidal ideation. Defendant scored very low on the Psychopathy Checklist-Revised, and expressed "genuine remorse" for his actions. Defendant also informed Dr. Hanlon that his behaviors at age 16 were "horrible" and resulted in "horrific acts that negatively impacted the lives of others."

¶ 20    Dr. Hanlon noted that defendant obtained a GED during incarceration, received some college credit, and had a series of jobs in the Illinois Department of Corrections. He was cooperative, responsive, and engaged with Dr. Hanlon's evaluation without malingering or exaggeration.

¶ 21    The defense entered a report prepared by mitigation specialist Michelle McCarran, Dr. Hanlon's CV and report, and a magazine article written by defendant, which are included in the record on appeal. The mitigation report described defendant's turbulent childhood, adolescent gang involvement, friendship with Tyler, and adult rehabilitation. Lengthy appendices documented defendant's educational achievements, certificates of completion and recognition from numerous institutions, and letters of support from friends, colleagues, and acquaintances.

¶ 22    In allocution, defendant stated that he was remorseful for participating in a "senseless" tragedy. He commented that "one of [his] worst memories" was seeing Doyle's young daughter explain what it meant to lose her mother at such a young age. Defendant explained that he never expected the Doyle family's forgiveness, but did not want them to suffer because of his actions. He informed the court that he was not "as cold blooded as [the] circumstances would suggest."

¶ 23    In announcing sentence on January 8, 2021, the court noted that it considered the evidence presented by the State, including the original and updated PSIs, the original trial and sentencing transcripts, the trial and sentencing transcripts from defendant's earlier murder conviction in case No. 93 CR 21971, and the victim impact statements in this case.[3] The court also considered the mitigation evidence, including the witness testimony, mitigation report, and defendant's allocution.

---

[3] The updated PSI is not included in the record on appeal.

¶ 24    The court commented on the "horrific facts" of the present case, stating defendant and Tyler followed Doyle home, shot her, and left her in her car to die. It stated that, approximately four months before murdering Doyle, defendant shot and killed Carlock, who was sitting in a vehicle with two women and three children, including an infant in a car seat beside Carlock. Shortly before Carlock's murder, defendant had approached another victim, put a gun to his face, and threatened to "pop" him if he did not turn over his wallet. The court stated that over a period of months in 1993, defendant "murdered two people, shot another individual, robbed another, and threatened to kill another," committing "a true path of death and destruction."

¶ 25    The court next addressed *Miller* and *People v. Buffer*, 2019 IL 122327, stating the cases set out detailed directions for factors to be considered in sentencing a juvenile, including defendant's age, evidence of his immaturity and impetuosity, and failure to appreciate risks and consequences. As to defendant's age, the court noted that defendant was 16 years old at the time of the instant offense, and it took into consideration Dr. Hanlon's testimony that defendant had an immature, undeveloped brain that resulted in impulsive behavior that affected his decision making. However, the court found that, while defendant may have been impulsive, his repeated acts of violence and harm were more than purely impulsive acts on repeated occasions. Rather, they were "truly calculated and cold acts" that caused "extreme suffering" to many people.

¶ 26    The court next recited the second factor, defendant's family and home environment, stating it considered in mitigation the unfair treatment by his biological father and older brothers, and his love and support from his mother and sisters. The court stated it considered evidence of familial or peer pressure pursuant under the third factor, commenting defendant was a gang member at the time of the offense and was influenced by the older Tyler, whom he admired. The mitigation report

and Dr. Hanlon's testimony confirmed this and reflected pressure may have influenced defendant in this case. Nevertheless, defendant's other acts in 1993 were not always committed with or induced by Tyler.

¶ 27 The court found no evidence the fourth factor, a juvenile's "incompetence" and inability to "deal with" police and prosecutors or assist his counsel, applied. Defendant's sisters testified he was "very intelligent," and there was no evidence to demonstrate he could not communicate with his attorney. Addressing the final factor, defendant's prospects for rehabilitation, the court stated it had closely reviewed the detailed mitigation report showing defendant had only minor infractions in IDOC, had obtained his GED, taken college classes, and participated in programs while in custody. Dr. Hanlon's testimony similarly showed defendant had "taken steps to better himself." The court added, however, that the present case was the second murder defendant committed, and thus "his background is significant."

¶ 28 Having considered the totality of the evidence presented and defendant's allocution "in which he did show signs of remorse," the court sentenced defendant to 60 years' imprisonment for murder, concurrent to the 15 years' imprisonment for attempted armed robbery, noting that defendant was eligible for day-for-day sentencing credit.

¶ 29 Defense counsel filed a motion to reconsider sentence, arguing, *inter alia*, that defendant's sentence was excessive given his degree of participation in the offense and that defendant did not deserve a sentence amounting to natural life imprisonment. The court denied the motion.

¶ 30 On appeal, defendant argues that the sentencing court did not adequately consider his youth, participation in the offense, sincere expression of remorse, and evidence of rehabilitation.

¶ 31 A sentence should reflect both the seriousness of the offense and the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I § 11; *People v. Neasom*, 2017 IL App (1st) 143875, ¶ 48. A sentencing court's decision is reviewed for abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A court abuses its discretion where the sentence is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id.* (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)). The court has broad discretion in imposing a sentence, and is afforded great deference because the judge "observed the defendant and the proceedings," and is better positioned to weigh the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Id.* at 212-13. The reviewing court " 'must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently.' " *Id.* at 213 (quoting *Stacey*, 193 Ill. 2d at 209).

¶ 32 A reviewing court may reduce the sentence imposed on a defendant by the sentencing court under Illinois Supreme Court Rule 615(b)(4). "That power, however, should be exercised 'cautiously and sparingly.' " *Alexander*, 239 Ill. 2d at 212 (quoting *People v. O'Neal*, 125 Ill. 2d 291, 300 (1988)).

¶ 33 A sentence within the statutory range is presumed to be proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. Here, defendant was convicted of first degree murder, with a sentencing range of 20 to 60 years' imprisonment. 730 ILCS 5/5-4.5-20(a)(1) (West 2018). Defendant's 60-year sentence falls within these statutory guidelines and is, therefore, presumed to be proper. *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 34    Although defendant's sentence falls within the statutory range, he argues the sentencing court abused its discretion by not adequately considering certain factors characteristic of his youth, including his degree of participation in the offense, peer pressure from Tyler, his sincere expression of remorse, and rehabilitation during incarceration.[4] Defendant also posits that no evidence showed that he knew Tyler was armed or intended to steal Doyle's vehicle.

¶ 35    Section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2018)) codified the factors that the court must consider before imposing a sentence on a juvenile offender. These factors include, *inter alia*, the offender's age, whether he was subjected to peer pressure, his potential for rehabilitation or evidence of rehabilitation, the circumstances of the offense, and his participation in the offense. 730 ILCS 5/5-4.5-105(a)(1), (2), (4), (5), (6) (West 2018). The court need not articulate each factor it considers in rendering a sentence for a juvenile offender, and that omission does not mean the court did not consider all relevant factors. *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 74. Absent "affirmative indication to the contrary," we presume that the court considered all mitigating evidence before it. *People v. Kindle*, 2021 IL App (1st) 190484, ¶ 67.

¶ 36    Defendant does not affirmatively demonstrate that the court did not adequately consider the mitigating evidence and relevant section 5-4.5-105 factors arising from defendant's youth. In fact, the record shows that the sentencing court did carefully consider those factors and supporting evidence. First, the court was presented with hundreds of pages of mitigating evidence and multiple mitigation witnesses. Not only is the court presumed to consider all evidence before it

---

[4] On appeal, defendant does not argue that he received a *de facto* life sentence. As defendant has the opportunity to receive day-for-day credit against his 60-year sentence, he did not receive a *de facto* life sentence. See *People v. Dorsey*, 2021 IL 123010, ¶ 65.

(*Kindle*, 2021 IL App (1st) 190484, ¶ 67), here the court affirmatively stated it reviewed defendant's PSI, the facts of the case, and defendant's mitigation evidence, including the mitigation report, witness testimonies, and defendant's allocution in which he expressed remorse.

¶ 37    Next, the court recited and addressed the relevant statutory factors at length. It considered defendant's young age at the time of the offense and Dr. Hanlon's testimony that defendant's brain was immature, which resulted in impulsive behavior that affected his decision making. It considered Tyler's influence over defendant, but noted that defendant committed other violent crimes in 1993 that were not induced by Tyler. It acknowledged defendant's family background, including negative treatment by his father and brothers, and evidence of his efforts at rehabilitation during incarceration. Nevertheless, in balancing the mitigating evidence against the circumstances of the offense and defendant's criminal background, the court found defendant's "truly calculated and cold acts" caused "extreme suffering" to many people and his background and the harm he caused others was "significant." See *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 13 (a lengthy criminal history may warrant a sentence substantially above the minimum); see also *Alexander*, 239 Ill. 2d at 214 ("[a] defendant's rehabilitative potential *** is not entitled to greater weight than the seriousness of the offense").

¶ 38    Given this record, defendant's argument that the court abused its discretion amounts to a request for this court to reweigh the evidence and substitute its judgment for that of the sentencing court. This we will not do. See *Alexander*, 239 Ill. 2d at 213. Defendant has failed to meet his burden to affirmatively show that the court did not adequately consider all relevant factors during sentencing. See *Kindle*, 2021 IL App (1st) 190484, ¶ 67. We thus find that the court did not abuse its discretion in sentencing defendant and affirm his sentence of 60 years' imprisonment.

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 40    Affirmed.